IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02717-REB-SBP

CONSTANTINE HELLEN,

      Plaintiff,

v.

AMERICAN FAMILY INSURANCE COMPANY,

      Defendant.

---

## ORDER ON MOTION TO QUASH SUBPOENA

---

**Susan Prose, United States Magistrate Judge**

      This matter is before this court on a Motion to Quash (the "Motion") filed by Defendant American Family Insurance Company ("American Family"). ECF No. 36. Plaintiff, Constantine Hellen, seeks discovery from American Family's retained expert, Eric Hammerberg, M.D., pursuant to a subpoena for documents under Federal Rule of Civil Procedure 45 (the "Subpoena"). The subpoena requests Dr. Hammerberg's ten most recent reports from independent medical evaluations ("IMEs") and medical records reviews ("MRRs"), as well as verification of the amount of income he has earned for performing such evaluations and reviews. American Family resists this discovery on behalf of its retained expert.

      This court considers the dispute pursuant to 28 U.S.C. § 636(b)(1)(A) and the relevant orders of referral. *See* ECF Nos. 7, 28, 37. The court held a discovery dispute hearing on August 3, 2023, at which time the court gave American Family leave to file the instant Motion. ECF No. 35. For the reasons that follow, the Motion is **GRANTED IN PART**.

## BACKGROUND

This action arises out of an automobile accident which occurred on April 19, 2018. ECF No. 5 ("Complaint") ¶ 6. During the pre-litigation claims-handling process, American Family, Mr. Hellen's insurer, retained Dr. Eric Hammerberg to perform an IME of Mr. Hellen. *Id.* ¶ 60. Based on the findings in Dr. Hammerberg's report, American Family denied additional coverage for injuries Mr. Hellen asserts were the result of the accident. *Id.* ¶¶ 61-62. In this subsequent litigation, Mr. Hellen brings claims against American Family for: (1) breach of his Uninsured Motorist insurance contract (*id.* ¶¶ 67-72); (2) bad faith breach of an insurance contract (*id.* ¶¶ 73-83); (3) unreasonable delay and denial of benefits under Colorado Revised Statute §§ 10-3-1115, 1116 (*id.* ¶¶ 84-92); and (4) breach of his Medical Payments insurance contract (*id.* ¶¶ 93-98). American Family has retained Dr. Hammerberg as an expert in this case; he has not performed an IME pursuant to Federal Rule of Civil Procedure 35.

Plaintiff issued the Subpoena to Dr. Hammerberg on July 7, 2023. *See* ECF No. 38-1. American Family has moved to quash the Subpoena insofar as it seeks two categories of documents:

1. Please produce complete copies of your ten (10) most recent narrative reports arising from independent medical examinations and/or medical record reviews of personal injury plaintiffs (with any patient identifying information redacted for privacy).

2. Please produce written verification of the total amount of income that you earned doing independent medical examinations and medical record reviews for the last five (5) years, with verification to be provided by IRS From [sic] 1099, W2, and/or signed affidavit.

Subpoena ¶¶ 1-2.

American Family argues that producing this information would be unduly burdensome, likely to chill the willingness of physicians to serve as experts in litigation, unavoidably intrusive of the other examinees' privacy interests in their medical and health information, and possibly privileged if a prior report concerns another claimant represented by the same counsel (because even with the name redacted, the fact pattern would be identifiable to the claimant's counsel). *See generally* Motion at 5-8, 10-12. With regard to Dr. Hammerberg's financial information, American Family argues that Plaintiff can obtain the requested information through other, less burdensome means—including by asking Dr. Hammerberg in deposition about the income he earns from IMEs and MRRs. *Id.* at 10-11. American Family contends that it will cost approximately forty thousand dollars for Dr. Hammerberg's accountants to "go through five years of financial documents to comply with the subpoena." *Id.* at 7. And past reports as to other claimants, American Family contends, are not probative and will result in a "sideshow inquiry into why Dr. Hammerberg reached his opinions in each of the ten cases[.]" *Id.* at 9-10. Further, those reports would be skewed to cases in which Dr. Hammerberg disagreed with the claimant's physician: "when an expert tells the attorney that he or she cannot provide an opinion contrary to [an] opposing expert, the expert usually does not write a report . . . and the case is settled." *Id.* at 9.

In response, Mr. Hellen asserts that American Family does not have standing to challenge a third-party subpoena except as to American Family's own privilege or privacy interests. ECF No. 38 ("Response") at 5-6.[1] He also contends that the information sought is relevant to "the

---

[1] This court's practice standards provide that parties shall comply with the district judge's page limitations on motions referred to this court. Judge Blackburn limits response briefs to 15 pages,

reasonableness of the insurer's *investigation*." *Id.* at 19 (emphasis in original). Specifically, Mr. Hellen argues that he is entitled to evidence that may show "the insurer . . . knowingly selected and retained a biased medical examiner as part of its evaluation of its insured's claim"—which "goes directly to Plaintiff's bad faith allegations." *Id.* at 9 (citing *Young v. Am. Nat'l Prop. & Cas. Co.*, No. 21-cv-00326-PAB-KLM, 2021 WL 7411471, at *5 (D. Colo. Dec. 13, 2021)).

In its reply brief, American Family contends that it has standing to oppose a subpoena served on its expert because it is responsible for paying for the expert's time and expense in responding to the subpoena. ECF No. 39 ("Reply") at 1 (citing *Donelson v. Fritz*, 70 P.3d 539, 546 (Colo. App. 2002)). American Family further argues that the information sought by Plaintiff is irrelevant because "American Family did not knowingly choose Dr. Hammerberg and has never used Dr. Hammerberg prior to this case." *Id.* at 3 (citing deposition of American Family's adjuster, Christina Osborn). Rather, American Family states, it used a third-party expert locator service to arrange Plaintiff's IME with Dr. Hammerberg. *Id.* (noting that, "[t]o avoid accusations of bad faith for hand selecting biased IME doctors, American Family uses third-party expert locator services who locate doctors in the appropriate specialty and arrange the IME").

## ANALYSIS

### I.   Legal Framework

***Propriety of the subpoena.*** A fundamental question, which neither party specifically addressed in its briefing, underlies this dispute: whether the Federal Rules of Civil Procedure

---

including the cover page and signature. *See* REB_Civil_Practice_Standards.pdf (uscourts.gov). Plaintiff's 21-page response exceeds that limit. In this instance, the court will consider the entire response brief. In the future, the parties are respectfully notified that they may be required to resubmit briefs that exceed the page limits established in the operative practice standards.

contemplate subpoenas like the one at issue here, directed to an opposing party's retained expert "whose information is subject to the special discovery provisions of Rule 26(b)(4)." 9A Wright & Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008) (stating that "Rule 45(d)(3)(B)(ii) provides protection for the opinion and work product of a *nonparty expert*") (citing, *inter alia*, *Marsh v. Jackson*, 141 F.R.D. 431, 431 (W.D. Va. 1992) (emphasis added)).

Under the Federal Rules, "an expert witness is heavily protected from discovery." *Spencer v. Greenwald*, No. 4:20-cv-00440-DCN, 2022 WL 2180052, at *3 (D. Idaho June 15, 2022) (citing Fed. R. Civ. P. 26(b)(4)(B)-(C)). While this court's research has revealed no cases from the Tenth Circuit or this District that have squarely addressed the question of whether Rule 45 subpoenas are properly issued to retained experts, other courts have found that the use of the subpoena process is improper in this context and have granted motions to quash subpoenas directed to such experts. *See, e.g.*, *Marsh*, 141 F.R.D. at 431 (holding that "Rule 26(b)(4) remains a limitation on the right of access by an opposing party to the evidence of experts who have been retained to testify in the case," and that "the discovery of the facts and opinions of those experts cannot obtain solely under Rule 45"); *Spencer*, 2022 WL 2180052, at *3 (collecting cases granting motions to quash Rule 45 subpoenas directed to retained experts, and concluding that "the Court sees no reason to remove the Rule 26 brake on the use of Rule 45 subpoenas"); *Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, No. 16-00136-CV-W-HFS, 2017 WL 2313288, at *2 (W.D. Mo. May 18, 2017) ("Rules 26 and 30 operate as a control, or brake if you will, on the potential runaway use of the subpoena duces tecum to compel the production of the evidence of experts retained by a party to testify at trial"). Other courts, however, have seen the matter differently. *See Roman v. City of*

*Chicago*, No. 20 C 1717, 2023 WL 121765, at *9 (N.D. Ill. Jan. 6, 2023) (concluding that "allowing a party to use a Rule 45 subpoena with an adverse retained expert furthers the goals of fair and transparent discovery of information that are embedded in the Federal Rules of Civil Procedure").

The use of a Rule 45 subpoena to elicit information from a retained expert generates other questions that do not admit of easy answers—including, as relevant here, whether American Family has standing to object to the subpoena to Dr. Hammerberg. It is certainly the case that, generally speaking, "a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy issue is implicated." *See, e.g.*, *E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.*, No. 11-cv-02560-MSK-MEH, 2012 WL 934312, at *2 (D. Colo. Mar. 19, 2012) (recognizing that "[o]bjections unrelated to a claim of privilege or privacy interest are not proper bases upon which a party may quash a subpoena [to a third party]").

But a party who has retained an expert surely has an interest in discovery directed toward that expert, even if that discovery does not specifically implicate a privilege or privacy interest of the party itself. *See Roman*, 2023 WL 121765, at *2 (recognizing that a non-party subpoena issued to an expert witness is unique in that "the expert witness was hired by that party to offer testimony") (citing *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen LLC*, 2013 No. SA-08-CA-00190-OLG, WL 12234284, at *1 (W.D. Tex. Mar. 20, 2013) (finding it to be "an impractical proposition that a hired expert witness must hire his own counsel to seek to be protected from discovery that might harm the party for whom he has been hired to testify"); *Marquette Transp. Co. Gulf-Island, LLC v. M/V Chembulk Westport*, No. 13-6216 c/w 13-2071,

6

2016 WL 659083, at *3 (E.D. La. Feb. 18, 2016) (finding a sufficient connection between a party and their expert for standing because the party is representing the interest of the expert, and the expert "is not a party to the action and will incur atypical expenses responding to the subpoena").

Here, where American Family has retained Dr. Hammerberg and is paying for his time and work, Dr. Hammerberg "is not a completely uninvolved third-party like most recipients of Rule 45 subpoenas," and their "interests are aligned in a contractual relationship[.]" *See Roman*, 2023 WL 121765, at *2 (holding that plaintiff who retained an expert witness has "at least a minimal and legitimate interest in the documents requested" and "can contest the issuance of the non-party subpoena"). American Family undeniably has a significant interest in the outcome of this dispute for the many reasons it articulated in its Motion, not least of which is the concern that experts who are pressed for information in a subpoena may be dissuaded from serving as experts. Motion at 5-7, 15; Reply at 1-2.

This court harbors serious doubts whether Rule 45 contemplates the submission of a subpoena directed to a retained expert witness. Nevertheless, the court finds that it need not resolve that question, or the related question of whether American Family has standing to object to such a subpoena. The court assumes without deciding, **and for purposes of the instant case only**, that the Subpoena is not facially improper[2] and will resolve the substantive disputes between the parties relying on its inherent authority to manage and limit discovery pursuant to Federal Rule of Civil Procedure 26. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion *or on its own*, the court must limit the frequency or extent of discovery otherwise allowed by these rules

---

[2] The court specifically notes that, on a fuller record with briefing from the parties, it might reach a different conclusion.

or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).") (emphasis added); *E.E.O.C. v. Dolgencorp, LLC*, No. CIV-21-295-RAW-GLJ, 2023 WL 5583993, at *2 (E.D. Okla. Aug. 30, 2023) ("[E]ven if the [party] did not have standing to quash or seek a protective order regarding the requested information, the Court has the inherent authority to control discovery to determine whether the requested documents should be subject to discovery in this case.").[3]

*Governing standards.* Rule 26(b)(1) permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. In considering whether the discovery sought is proportional, the court "weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 282 (D. Colo. 2022) (citing Fed. R. Civ. P. 26(b)(1)). Discovery directed at

---

[3] *See also, e.g.*, *Copeland v. C.A.A.I.R., Inc.*, No. 17-cv-564-TCK-JFJ, 2020 WL 972754, at *3 (N.D. Okla. Feb. 28, 2020) ("In cases where a moving party lacks standing to challenge a third-party subpoena, a court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)."); *Gov't Empls. Ins. Co. v. Trnovski*, No. CV 16-4662 (CCC), 2018 WL 5281424, at *3 (D.N.J. Oct. 23, 2018) ("Although the Court finds that defendants lack standing to quash the Subpoenas, the Court will nevertheless address whether the information that Plaintiffs seek is relevant under Rule 26."); *cf. In re Snyder*, No. 20-mc-00199-NRN, 2021 WL 848193, at *4 (D. Colo. Mar. 5, 2021) ("A court may exercise its inherent authority to quash or modify an unduly burdensome subpoena.").

irrelevant matters imposes a per se undue burden on the responding party. *See, e.g.*, *Von Schwab v. AAA Fire & Cas. Ins. Co.*, No. 14-cv-00183-CMA-NYW, 2015 WL 1840123, at *2 (D. Colo. Apr. 21, 20215).

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)." *GSL Grp. Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020) (citing 9A Wright & Miller, *Federal Practice and Procedure* § 2452 (3d ed. 2008)); *see also Wang v. All. for Sustainable Energy, LLC*, No. 20-cv-03780-NYW, 2022 WL 1500779, at *2 (D. Colo. May 12, 2022) (same). Therefore, "a subpoena is bound by the same [Rule 26] standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case." *Oransky v. Martin Marietta Materials, Inc.*, No. 18-cv-00266-MSK-NRN, 2018 WL 11514384, at *1 (D. Colo. Sept. 7, 2018).

"The movant bears the burden of persuasion in a motion to quash a subpoena." *See, e.g.*, *Bales v. Quest USA Corp.*, No. 18-mc-00222-RM, 2019 WL 1454696, at *1 (D. Colo. Apr. 2, 2019); *Cuomo v. New York State Assembly Judiciary Comm.*, No. 22-MC-3027 (LDH) (TAM), 2023 WL 4686957, at *6 (E.D.N.Y. July 21, 2023). And the court's decision on a motion to quash, as with any discovery ruling, is "within the broad discretion of the trial court, and [the Court of Appeals] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, Nos. 21-1353 & 21-1434, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (internal quotation marks omitted) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *Prisbrey v. State Auto Ins. Cos.*, No.

9

4:21-cv-124, 2023 WL 4745106, at *2 (D. Utah July 25, 2023) ("motions to quash are left to the discretion of the court"); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

With these governing principles in mind, the court turns to the two disputes between the parties.

## II.   Dr. Hammerberg's Previous Reports

The Subpoena to Dr. Hammerberg seeks "complete copies of your ten (10) most recent narrative reports arising from independent medical examinations and/or medical record reviews of personal injury plaintiffs (with any patient identifying information redacted for privacy)." Subpoena ¶ 1. The court finds that this information is neither relevant nor proportional to the needs of the case.

Reduced to its essence, Mr. Hellen's argument is that he is entitled to Dr. Hammerberg's reports in unrelated cases brought by unrelated parties so that he can suss out Dr. Hammerberg's potential bias. Response at 8 & *passim* ("Whether American Family selected a biased examiner goes directly to Plaintiff's bad faith allegations, so prior reports and evidence of financial relationship are discoverable."). Mr. Hellen, however, presents no substantive information that might indicate Dr. Hammerberg approached his evaluation of Mr. Hellen from a biased perspective. Mr. Hellen's personal opinions about Dr. Hammerberg's bias carry little weight in the court's analysis of the discovery question here, resting as they do on: (1) Mr. Hellen's supposition that Dr. Hammerberg is biased simply because "he was hired by you guys" (i.e., American Family); (2) Mr. Hellen's speculation that Dr. Hammerberg may have "worked for" or been "hired by" other insurance companies; and (3) Mr. Hellen's personal opinion that Dr.

Hammerberg got it wrong when he concluded that Mr. Hellen "didn't have a significant enough head strike to cause a brain injury." *See* Hellen Dep. Tr., ECF No. 38-3. Any plaintiff surely would be inclined to mount similar accusations against any expert who questions the plaintiff's personal assessment of the severity of his injury.[4]

Neither does the court find any plausible suggestion of bias on Dr. Hammerberg's part merely because his assessment of Mr. Hellen's head injury differs from the opinions of some of Mr. Hellen's treatment providers. *See* Response at 11. That is hardly surprising; this case may be decided, as so many cases are, by the jury's conclusion as to which side's medical experts are more credible. But the mere existence of a disagreement between medical professionals does not reasonably indicate that the expert who holds the contrary opinion is biased.

In light of this record, the court finds there has been no showing that other reports written by Dr. Hammerberg—focused as they necessarily would be on the unique circumstances of the particular mechanism of injury at issue, the injured party's specific medical history, and a plethora of other unknown and distinguishing factors—have any potential relevance to the case at hand. "Absent some showing of potential relevance," the court finds that the Subpoena should be quashed to the extent it seeks these unrelated reports, "because speculation as to potential bias alone is not a sufficient ground to burden [Dr. Hammerberg] and third-parties with the task of sifting through materials in the unrelated expert reports to determine whether such reports

---

[4] The holding in *Young v. Am. Nat'l Prop. & Cas. Co.*, No. 21-cv-00326-PAB-KLM, 2021 WL 7411471 (D. Colo. Dec. 13, 2021), does not alter the court's opinion on this issue. While the court in *Young* recognized that a knowing selection of a biased examiner is relevant to a bad faith dispute, it did not address the discoverability of past IME reports by a retained expert involving unrelated third parties.

contain confidential materials properly subject to redaction." *Von Schwab*, 2015 WL 1840123 at *2-3 (granting motion for protective order where subpoena sought last ten reports of insurer's expert who "consistently opines in favor of insurance companies in actions alleging bad faith on the part of same"). As the court in *Von Schwab* neatly summarized the key point, the plaintiffs there (like Mr. Hellen here) "have failed to provide the court with a reasonable basis to conclude that the relevance of the unrelated expert reports, or any bias such reports could reflect, outweighs the burden" to Dr. Hammerberg of compiling, producing, and redacting the reports. *Id.* (citing Charles E. Wright et al., 8 FED. PRAC. & PROC. CIV. § 2015 (3d ed.) (collecting authorities) (noting that, as to the discoverability of evidence of bias generally, "the task for the court is to assess the likelihood that the discovery actually will produce admissible evidence; unless there is reasonable basis to predict that it will, discovery may be refused on that ground")); *see also In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1441, 1444 (D. Colo. 1988) ("A finding that conclusions and opinions offered in unrelated litigation fall within the scope of Rule 26 discovery would unnecessarily burden technical litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand. Defendants' general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and deposition.").

Requiring Dr. Hammerberg to produce unrelated reports would create unnecessary disputes regarding the accuracy and reliability of Dr. Hammerberg's prior opinions in wholly unrelated cases. Plaintiff is not entitled to this information simply because he speculates that Dr. Hammerberg is biased in favor of American Family. *Von Schwab*, 2015 WL 1840123, at *3; *see*

*also Tilen v. Travelers Commercial Ins. Co.*, No. CV 17-6904-RSWL (ASx), 2018 WL 4963124, at *8 (C.D. Cal. May 22, 2018) (rejecting plaintiff's request for previous reports from defendant's expert because plaintiff provided no "factual support for [its] allegation of bias" and "it is mere speculation at this point that the [expert's reports] would provide *anything* of value"); *Lind v. U.S.*, No. CIV 13–032–TUC–CKJ, 2014 WL 2930486, at *4 (D. Ariz. June 30, 2014) ("[Plaintiff's] speculation that the IME reports contain evidence of bias does not allow disclosure of the IME reports so [she] can explore whether that speculation is true."). Indeed, there is little basis here to support such speculation. Sworn testimony from American Family's adjuster reveals that Dr. Hammerberg had never performed an IME on behalf of American Family prior to Mr. Hellen, and Mr. Hammerberg was selected by a third-party service, with American Family playing no role in that choice. Reply at 3; ECF No. 39-1 (C. Osborn 8/4/2023 Dep. Tr.) at 113:4-6, 181:2-4 (testimony from adjuster that American Family uses whatever doctor an entity called "Exam Works" provides, and that the adjuster had not previously worked with Dr. Hammerberg).

As American Family notes, many Colorado state court judges have similarly rejected demands for an expert's prior medical reports[5]—and so, recently, has Judge Neureiter of this court. *See* Motion at 3-4 (collecting cases); ECF Nos. 36-8 to 36-15 (state court orders)[6]; *see also*

---

[5] While these state court decisions are instructive, the court resolves the discovery question here pursuant to the standards articulated in the Federal Rules of Civil Procedure. *See, e.g.*, *Polk v. Swift*, 339 F.R.D. 189, 195 (D. Wyo. 2021) (recognizing that "matters pertaining to procedural issues, such as protective orders, relevancy, and proportionality, are subject to the Federal Rules.") (citing *American Ben. Life Ins. Co. v. Ille*, 87 F.R.D. 540, 542 (W.D. Okla. 1978)).
[6] *See, e.g.*, *Reiter v. Anderson*, No. 07CV12500 (Denver District Court), 8/25/23 Order, ECF No. 36-5 at 1 at 1 ("the marginal cross-examination benefits of [expert's prior reports] are greatly outweighed by the costs and burdens such discovery will impose on the defense experts," where

*Hicks v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-02762-WJM-NRN, September 12, 2023 Order, ECF No. 39-2 at 1-2 (quashing subpoenas "with respect to the last 20 reports from Dr. Stull for State Farm. Dr. Stull is required to disclose under [Rule 26(a)(2)(B)(v)] the last 4 years of cases in which he has given deposition or trial testimony.").

In their briefing, both sides discuss *Bryant v. Dillon Real Estate Co., Inc.*, No. 18-cv-00479-PAB-MEH, 2019 WL 3935174 (D. Colo. Aug. 20, 2019), *see* Motion at 12-15, Response at 13-15, and so this court explains why it does not view that decision as pertinent to its analysis here. *Bryant* involved a motion to require an IME pursuant to Rule 35 and the examined party's entitlement to certain "like reports" of the examiner under that Rule:

> Request by the Party or Person Examined. The party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report, together with like reports of all earlier examinations of the same condition. The request may be made by the party against whom the examination order was issued or by the person examined.

Fed. R. Civ. P. 35(b)(1). *Bryant* evaluated the moving party's obligation to "deliver copies of like reports of all earlier examinations of the same condition." *Bryant*, 2019 WL 3935174, at *4. The court construed this language—based on its interpretation of certain language in the 1970 Advisory Committee Notes to Rule 35(b)—to mean that "an examined party is entitled to production by the examiner of 'all' reports, to which the examiner has access, regarding

---

there is "very little chance that any expert's prior reports or prior testimony will have any bearing on the current issues"); *Schultz v. Landaverde*, No. 2017 CV 31005 (Arapahoe County District Court), 7/2/2018 Order, ECF No. 36-13 at 10 ¶ 29 ("The Court will <u>not</u> require either Dr. Fall or Himpsel to disclose expert reports, templates of expert reports, or transcripts of testimony generated in other cases based on other facts for defendants' counsel or for any other attorney for the simple fact that such a comparison of 'apples to oranges' on factual issues is <u>not</u> relevant to the facts set forth in this case.") (emphasis in original).

examinations of the same condition(s) suffered by the examined party." *Id.* In *Bryant*, the physician was ordered to produce the last twenty "like reports" prepared for the defense counsel's firm, the last twenty "like reports" prepared by the physician for any defendant, and the last twenty such reports the physician had prepared for anyone. *Id.*

Rule 35 is not in play here, where Dr. Hammerberg's examination of Mr. Hellen was conducted pursuant to the terms of Mr. Hellen's insurance policy. *See, e.g.*, *Cheff v. Am. States Preferred Ins. Co.*, No. CV 22-18-M-KLD, 2023 WL 2330252, at *2 (D. Mont. Mar. 2, 2023) (where a physician's pre-litigation examination of the plaintiff was not ordered by the court and was a function of a provision of his insurance policy, "the provisions of Rule 35 do not apply and cannot form the basis for Plaintiffs' request for 'like reports' made by Dr. McFarland") (citing *Good v. Skifstad*, No. CV-18-80-BU-BMM, 2019 WL 2453111, at *4 (D. Mont. June 12, 2019)). This court therefore does not apply the "like reports" language of Rule 35. The court further respectfully notes that other courts have not agreed with *Bryant's* construction of Rule 35(b)(1). *Cheff*, 2023 WL 2330252, at *5 (holding, in declining to follow *Bryant*, that "a reasonable interpretation of the plain language of Rule 35(b) in context with the rule's other provisions and the advisory committee notes does not justify plaintiffs receiving examination reports of other individuals, completely unrelated to the pending litigation, examined by defendants' chosen physicians");[7] *see also Kelly v. Blanchard*, 529 P.3d 590, 596 (Ariz. App. 2023) (declining to

---

[7] *Cheff* specifically disagreed with *Bryant's* "selective reading of the 1970 advisory committee notes to subsection (b)(1), which state, '[the amendment] embodies changes required by the broadening of Rule 35(a) to take in persons who are not parties.' Plaintiffs argue this sentence supports their position that reports of persons who are not parties should be disclosed under the rule. The Court disagrees. The advisory committee notes to subsection (a) explain that the committee intended 'to extend the rule to provide for an order against the party for examination

follow *Bryant* in finding that the advisory committee notes refer "to language added to the end of . . . Rule 35(b)(1) to reflect that trial courts were given authority in Rule 35(a) to order an examination of a non-party in the custody or control of a party," and holding that "'like reports of all earlier examinations of the same condition' refers *only to reports about the individual examined*") (emphasis added).

Having found that reports concerning non-parties bear no relevance to the issue at hand, the court briefly examines the question of proportionality. The court's analysis on this point might begin and end with the proposition that "discovery directed at irrelevant matters imposes a *per se* undue burden on the responding party," *Von Schwab*, 2015 WL 1840123, at *2, but the court nevertheless examines the parties' arguments.

Ordering Dr. Hammerberg's compliance with the Subpoena would mandate that he rigorously comb and redact ten reports (of unknown length) to ensure that no possible identifying information is revealed. Even then, the court is not convinced that the patient's privacy interests would be fully protected. American Family posits that Dr. Hammerberg's most recent ten reports may have been generated in connection with claims that are currently being litigated—including in cases being handled by one of the more than sixty attorneys associated with the firm representing Mr. Hellen—and that inadvertent exposure could occur by this means, to the detriment of the defense. *See* Motion at 12 (predicting that "it will happen someday that an

---

of a person in his custody or under his legal control.' Thus, subsection (a) defines 'persons who are not parties' as those persons in the custody or under the legal control of a party; for example, "a parent or guardian suing to recover for injuries to a minor.' *There is nothing in the advisory committee notes to imply the rule should be extended to unrelated non-parties who have previously been treated by the same physician for the same condition*." *See* 2023 WL 2330252, at *4 (emphasis added).

expert will be forced to produce a report for an on-going case that has the same plaintiff's attorney, and that attorney will gain unfair insight into the defendant's case"). Mr. Hellen's rejoinder is that there is no physician-patient privilege attached to independent medical examinations. Response at 6-7. That may be, but the absence of a formal privilege does not mean that those third parties surrendered all privacy rights, nor does it mean that they consented to allow Dr. Hammerberg to reveal their personal medical information in the context of active litigation in which they have no involvement.

On a broader level, American Family argues that burdening medical experts like Dr. Hammerberg with the obligation to compile, redact, and produce reports from other cases creates a "chilling" effect, compromising the ability of defendants to find experts willing to work with them. Motion at 5-6 (discussing state cases addressing this issue). To be sure, the psychiatric expert who was retained to conduct the Rule 35 examination in *Bryant* averred that, in forty years of practicing medicine, he had "never once been required to produce the report of a non-party and [was] unwilling to move forward with a Rule 35 examination if it is conditioned upon producing the report of a non-party." *Bryant*, No. 18-cv-00479-PAB-MEH, September 4, 2019 Declaration of Gary S. Gutterman, M.D., ECF No. 63-1 ¶ 3 (filed in this case at ECF 36-7); *id.* ¶ 6 (estimating that it would take forty to fifty hours for the expert to comply with the court's order in *Bryant*).[8] Mr. Hellen did not respond to this argument, and this court has no means to gauge how broadly Dr. Gutterman's sentiment may be shared among the community of potential

[8] Dr. Gutterman's declaration was appended to the defense's objection to the *Bryant* order. Dr. Gutterman ultimately refused to proceed, requiring the defense to obtain another examiner. *See Bryant*, ECF No. 70 at 2-3. It appears from the docket that the case settled before the objection to the order was resolved.

defense experts. But it is logical to expect that allowing discovery of the type Mr. Hellen seeks may discourage reputable experts from accepting defense work in cases like this one. That result, the court respectfully observes, would be to the detriment of the truth-seeking function of the litigation process.

The court finds no reason to invite that risk under the circumstances before it now. Here, as in *Von Schwab*, Mr. Hellen has provided the court with no basis to find that the relevance of Dr. Hammerberg's unrelated reports, or any supposed bias that could be inferred from such reports, outweighs the burdens that flow from producing those reports—both to Dr. Hammerberg and to the litigation process more generally. *See* 2015 WL 1840123, at *3 ("[S]peculation as to potential bias alone is not a sufficient ground to burden [an expert] and third-parties with the task of sifting through materials in the unrelated expert reports to determine whether such reports contain confidential materials properly subject to redaction."). The court therefore finds a lack of proportionality in the subpoena for those materials.

For these reasons, the court grants American Family's motion to quash the Subpoena with respect to Dr. Hammerberg's IME or MRR reports involving other patients. Dr. Hammerberg is not required to produce these reports. In accordance with Rule 26, Dr. Hammerberg is required only to disclose, if such disclosure has not already been made, "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v).

## III.    Dr. Hammerberg's Personal Financial Information

The Subpoena also seeks "written verification of the total amount of income that [Dr. Hammerberg] earned while doing independent medical examinations and medical record reviews

for the last five (5) years, with verification to be provided by IRS From [sic] 1099, W2, and/or signed affidavit." Subpoena ¶ 2. The court finds that this request sweeps too broadly, overly intrudes into Dr. Hammerberg's financial privacy, and imposes an undue burden on him.

Financial motivation is obviously relevant to bias, but fodder for cross-examination of an expert witness can be obtained by less intrusive means that those contemplated in the Subpoena. As an initial matter, Mr. Hellen will be (and, presumably, has been) apprised of all cases in the previous four years in which Dr. Hammerberg testified, and Mr. Hellen will have the ability to ask Dr. Hammerberg about those cases in deposition and to obtain documents related to those cases. With that information in Mr. Hellen's possession, the court finds that the production of a minimal amount of additional information is sufficient to enable Mr. Hellen to cross-examine Dr. Hammerberg as to potential bias stemming from financial motivation.

To the extent Dr. Hammerberg has not already done so in response to written discovery, the court directs that he provide the following information to counsel for Mr. Hellen:

> (1) the total percentage of Dr. Hammerberg's gross income derived from forensic work (including IMEs, MRRs, and expert-related services) for the previous four years, i.e., 2020 to 2023, and

> (2) the total percentage of the forensic work identified in point number 1 that Dr. Hammerberg performed for American Family specifically, for each of the four years.

Dr. Hammerberg shall provide this information, in a deposition or via a declaration executed pursuant to 28 U.S.C. § 1746(2), to counsel for Mr. Hellen no later than 30 days following the date of this order, unless a different date is agreed to by the parties. [9] If information for 2023 is

---

[9] This court extended the deadline to take Dr. Hammerberg's deposition and a Rule 30(b)(6) deposition of American Family, until 30 days after this order issues. ECF No. 48.

not currently available, Dr. Hammerberg shall promptly provide that information upon receiving it. **The production of Dr. Hammerberg's personal tax records, such as form 1099s, or other personal financial records, is not required**. On this record, the court finds no basis to conclude that Dr. Hammerberg will not be forthcoming in his statements in the declaration he is directed to provide, or in his deposition.

## CONCLUSION

For the reasons set forth above, American Family's Motion to Quash, ECF No. 36, is **GRANTED** insofar as the Subpoena seeks previous IME/MRR reports involving persons not involved in this litigation. The Motion is **GRANTED IN PART** insofar as the Subpoena seeks Dr. Hammerberg's personal financial information. Dr. Hammerberg shall provide that financial information, to the extent he has not already done so, in accordance with the terms set forth above.[10]

DATED: January 9, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[10] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").